# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**INNOVATION LAW LAB,**

      **Plaintiff,**

v.                                                                                          **Civ. No.** 2:22-cv-00443-SMV-KRS

**U.S. IMMIGRATION AND**
**CUSTOMS ENFORCEMENT,**

      **Defendant.**

### DECLARATION OF ALLEGRA LOVE

I, Allegra Love, declare as follows:

1. I am an attorney barred in the state of New Mexico. I have been practicing immigration law for 10 years. I currently provide legal services to immigrants detained in the El Paso Enforcement and Removal Operation area of U.S. Immigrations Customs and Enforcement (ICE), on behalf of the El Paso Immigration Collaborative (EPIC).

2. On March 20, 2022 I visited Torrance County Detention Facility (TCDF) in Estancia, New Mexico, to conduct a legal presentation for about 19 individuals detained there. The purpose of our visit was to orient detainees to their legal rights and conduct intakes to help them find legal representation. Additionally we wanted to discuss the conditions at the facility because of the Department of Homeland Security (DHS) Office of Inspector General's (OIG) Management Alert released on March 16, 2022 that called for the immediate removal of all detainees from TCDF.

3. Sometime that morning, several guards entered the room in TCDF where we were conducting the presentation along with a woman who did not appear to be a guard. She motioned for me to come speak with her away from the rest of the crowd. She introduced herself as an

1

inspector from the Nakamoto Group and explained that they were conducting an inspection of TCDF because of the OIG management alert.

4. The inspector apparently assumed that I was there to provide services because I was a Legal Orientation Program (LOP) provider. I am not. LOP providers conduct legal services under a specific contract with the Executive Office of Immigration Review, which is a federal agency within the U.S. Department of Justice. I did arrange the legal presentation in accordance with ICE's rules but my group is not a designated LOP provider.

5. Because access to legal services presentations is part of ICE's 2011 Performance-Based National Detention Standards (PBNDS) which form the basis of a detention facility inspection, the Nakamoto inspector asked me a lot of questions concerning our ability to provide legal presentations. Our group has had extraordinary difficulties providing legal services in TCDF. This has been well documented in the media, in complaints to the DHS Office of Civil Rights and Civil Liberties, and even in a formal demand letter threatening to sue ICE. I previously provided the DHS Office of Inspector General a large volume of evidence that our legal access had been blocked at TCDF. I offered to share this evidence with the inspector from Nakamoto as well.

6. The inspector seemed confused about our presence at the facility. She suggested to me that because we were not officially contracted LOP providers, the PBNDS did not apply to our difficulties accessing our clients. However the PBNDS, per section 6.4.V, does not specify that legal services groups must be LOP providers to conduct group presentations on legal rights. In fact, I had multiple correspondences with one of ICE's Supervisory Detention and Deportation Officers for TCDF to ensure our presentation complied with PBNDS.

7. Based on my observations of the Nakamoto inspector on this day, I understood that the Nakamoto inspector did not believe our complaints about legal access were relevant to the inspection.

8. I later read the report that the Nakamoto Group released about this inspection. It did not mention legal access issues.

9. After that our conversation took a more candid turn. The inspector told me that she was not sure what all the fuss was about the OIG alert. She told me that she had been an inspector for decades and had never seen such a clean and well-run detention center. She spoke especially favorably about medical care. She told me that she would send her own children to receive medical care there.

10. I shared with the inspector that our detained clients at TCDF consistently complained about the quality of the medical care. I shared with her multiple anecdotes about severe medical neglect that our clients had reported over the last year. We discussed the discrepancies between what she heard from detainees in her capacity as an inspector and what I heard in my own capacity as a lawyer. I suggested that detainees were reluctant to share information with a government contractor for fear of retaliation. This is a fear that many of my clients have confessed to me. She agreed that this was a possibility. She also told me that she believed another explanation for the discrepancy was that my clients were lying. I asked her why she thought they would lie and she said they might lie as a tool to effectuate their own release from detention.

11. Our conversation lasted around 20 minutes. She thanked me for my time and I passed her my contact information in case she wanted to follow up on anything that I shared with her. I did not hear from her.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

EXECUTED this 12th day of June, 2022 in Santa Fe, New Mexico.

Allegra Love
112 Mesa Vista St.
Santa Fe, NM 87501
(505) 699-4288
allegralove1@gmail.com